UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| CHERYL L. SPARKS, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CAUSE NO. 3:08-CV-210 CAN |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | ) ) ) ) ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

On May 1, 2008, Plaintiff, Cheryl L. Sparks ("Sparks"), filed her complaint in this Court. On July 18, 2008, upon the consent of the parties, this case was reassigned to the undersigned for all purposes. On August 25, 2008, Sparks filed an opening brief, in which she asks this Court to enter judgment in her favor or to remand this matter to the Commissioner. On December 10, 2008, Defendant, Social Security Administration ("SSA"), filed its response brief. On December 30, 2008, Sparks filed a reply. This Court now enters its ruling based upon the record of this case that includes the pleadings, the motions, the administrative record, briefs of the parties, and the arguments of counsel.

**I.    PROCEDURE**

On December 16, 2004, Sparks filed her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"), alleging a disability onset date of June 2, 2004. Sparks claims she is entitled to benefits pursuant to Title XVI and Title II of the Social Security Act. See 42 U.S.C. §§ 216(I), 223, 1611, 1614. Sparks' application was initially denied and again upon reconsideration. On May 10, 2007, Sparks appeared at a hearing before

an Administrative Law Judge ("ALJ"). On August 10, 2007, the ALJ denied Sparks' applications.

The ALJ found that Sparks had a residual functional capacity ("RFC") to perform a full range of work at all exertional levels, however, the ALJ found that Sparks could not maintain regular work activity on a regular and continuing basis. Based on Sparks' age, education, work experience, and RFC including Sparks' substance use disorders, the ALJ found that there were no jobs that exist in significant numbers in the national economy that Sparks could perform. Such a ruling, under normal circumstances, would have rendered a finding of disability. However, the ALJ additionally found that, if Sparks stopped her substance use, the remaining limitations would not cause more than a minimal impact on her ability to perform basic work activities. As a result, the ALJ ultimately concluded that Sparks was not disabled.

On August 22, 2007, Sparks filed a timely request for review with the Appeals Council. On January 11, 2008, the Appeals Council denied Sparks' request for review; and, as a result, the ALJ's decision became the Commissioner's final decision. 20 C.F.R. § 404.981; Fast v. Barnhart, 397 F.3d 468, 470 (7th Cir. 2005). Consequently, Sparks filed a complaint in this Court seeking a review of the ALJ's decision. This Court may enter a ruling in this matter based on the parties' consent, 28 U.S.C. § 636(c), and 42 U.S.C. § 405(g).

## II. ANALYSIS

### A. Facts

At the time of the ALJ's decision, Sparks was 35 years old and had a high school level education. She has prior relevant work experience as a cashier and waitress. Sparks alleges that she has been disabled since June 2, 2004, due to her mental impairments and substance

dependance issues. Specifically, Sparks claims impairments of bipolar disorder, alcohol dependence, and cannabis dependance.

On March 13, 2002, Sparks was arrested for drinking and driving. While in custody, Sparks reported suicidal thoughts and was referred for a chemical dependancy evaluation. Sparks was transferred to St. Anthony Memorial Health Center. Admitting physician, John Sajiv, M.D. ("Dr. Sajiv"), diagnosed Sparks with major depressive disorder, post traumatic stress disorder ("PTSD"), and alcohol abuse. Dr. Sajiv gave Sparks a score of 30 on the Global Assessment of Functioning scale ("GAF")[1], indicating serious impairment in communication or judgment.

On March 20, 2002, Sparks was seen by Certified Alcohol and Drug Addiction Counselor, Sandra Hill, R.N. ("Hill"). Hill opined that Sparks was probably diagnosed with major depression disorder, alcohol abuse, and PTSD and noted that Sparks was likely self-medicating her depression with the use of alcohol and marijuana. Hill gave Sparks a GAF score of 40.

On March 21, 2002, Dr. Sajiv discharged Sparks from St. Anthony Memorial, noting that Sparks had a current GAF of 50 and reaffirming his earlier diagnosis of major depression, alcohol abuse and PTSD. Dr. Sajiv discharged Sparks into the care of Porter-Starke Counseling Services ("Porter-Starke").

On July 18, 2002, Sparks began seeing Dr. Mitchell Goldstein ("Dr. Goldstein"), who worked with Porter-Starke. While being treated by Porter-Starke Services, Sparks was

---

[1] GAF scores represent on a single day an individual's overall level of functioning, including symptom severity. The GAF numeric scale runs from 0 through 100. The higher the GAF score, the less severe the symptoms and the individual will have a higher level of functioning.

diagnosed with bipolar disorder, PTSD, and alcohol abuse. On May 7, 2003, Porter-Starke discharged Sparks for failure to comply with treatment parameters and recommended that Sparks be returned to psychiatric care.

Sometime after November 19, 2002, Sparks moved to Missouri for a marriage. While living in Missouri, Sparks sought mental health treatment and began seeing Michael Cundiff ("Cundiff") for counseling. In his treatment notes, Cundiff noted Sparks' self-destructive behavior, including two self-inflicted superficial cuts on Sparks' left wrist and arm, hitting herself on the head with a flashlight, and hitting her hear on a truck hood. Cundiff diagnosed Sparks with bipolar disorder and gave her an initial GAF score of 35. However, Cundiff later gave Sparks a GAF score of 50 and noted Sparks' continued improvement.

On November 24, 2003, after moving back to Indiana, Sparks met with James Kirk ("Kirk") to reestablish treatment at Porter-Starke. At the initial evaluation appointment, Kirk noted that Sparks was re-establishing her life in a positive manner but was struggling due to little or, at times, no financial support and living in a homeless shelter. Kirk diagnosed Sparks with bipolar disorder, PTSD, and alcohol abuse in full remission, assigning Sparks a GAF score of 51. Thereafter, Sparks saw Dr. Goldstein at Porter-Starke for three follow-up appointments over the course of the next three months.

On March 17, 2004, Sparks underwent a psychological evaluation by doctor Gary Durak ("Dr. Durak"), who was selected by the Disability Determination Office of the Social Security Department of the State of Indiana. Dr. Durak diagnosed Sparks with bipolar disorder, alcohol abuse, and cannabis dependency. He noted that Sparks had severe stressors in her life, such as homelessness and ongoing physical abuse. In addition, Dr. Durak gave Sparks a GAF score of 50

4

but noted that Sparks was incapable of managing her funds. On May 7, 2004, a non-examining State agency reviewer, I. Gange, Ph.D. ("Dr. Gange"), completed a Psychiatric Review Technique Form ("PRTF"). Dr. Gange indicated that, although Sparks suffered from affective disorders, her impairments were not severe.

On August 17, 2004, Sparks sought treatment for depressive feelings at the Swanson Center. On September 24, 2004, Dr. S. L. Babu ("Dr. Babu") conducted a psychiatric evaluation. Dr. Babu diagnosed Sparks with major depression, alcohol abuse in full remission, and marijuana dependence. Dr. Babu also gave Sparks a GAF score of 50 and recommended regular therapy sessions.

On December 6, 2004, Sparks went to the emergency room complaining of depression and suicidal thoughts. Sparks had cut her left wrist with a razor two days before. Sparks reported that she had not been taking any medication but was occasionally using alcohol and marijuana. Sparks mood was agitated, depressed and fearful; but she was fully-oriented, her thought content and affect were appropriate, and her memory was good. Sparks was discharged in a stable condition on the same day.

In February 2005, Dr. Babu referred Sparks to social worker, Dennis Brown ("Brown"), to complete a Report of Psychiatric Status form. Dr. Babu co-signed the results of the Report, adopting Brown's findings as his own. Dr. Babu indicated that Sparks had recurrent major depression of moderate severity, exacerbated by severe financial stressors. Dr. Babu also noted that Sparks had cannabis dependence, alcohol abuse in full remission, and opined that tests should be done to rule out bipolar disorder. Dr. Babu gave Sparks a GAF score of 60 and noted that her highest GAF for the previous year was 70. Dr. Babu stated that Sparks' prognosis was

5

"guarded" but noted that Sparks is "able to manage life situations better when she is taking medication."

On January 18, 2005, as part of Sparks' application for social security benefits, Sparks' friend, April Wright Harradon ("Harradon"), completed a third party report of Sparks' daily activities. Harradon reported that Sparks always wants someone with her and noted that Sparks gets depressed easily, screaming and crying when things do not go right. Harradon characterized Sparks as very unpredictable because of her frequent mood swings. Additionally, on March 3, 2005, Sparks' ex-husband, Quince Campbell ("Campbell"), spoke with a Social Security Administration district official. Campbell noted that Sparks would frequently get into arguments with friends when she forgets to take her medications. Campbell indicated that Sparks improved while taking her medications and reported that he could tell when Sparks was not taking her medications. Campbell also reported that marijuana use calms Sparks down and allows her to focus better.

On March 4, 2005, Dr. D. Unversaw ("Unversaw") reviewed the evidence for the Indiana Disability Determination Service. Unversaw indicated that Sparks had bipolar disorder, but noted that she had no episodes of decompensation. Unversaw found that Sparks was moderately limited in the ability to maintain attention and concentrate for extended periods of time. Unversaw opined that Sparks was not fully credible and concluded that the medical evidence was not fully consistent with other evidence in the file.

On July 24, 2006, Sparks underwent a comprehensive clinical assessment at the Swanson Center, performed by Ann Simmons ("Simmons"). Sparks admitted to self-medicating with marijuana, stating that she had not received medications for about a year. Sparks stated that she

6

continued to use marijuana daily because she believed it helped maintain her moods, feel normal, and focus. Simmons concluded that Sparks met the criteria for bipolar disorder and cannabis dependence. Simmons gave Sparks a GAF score of 40. Simmons recommended that Sparks attend a group substance abuse program, psychiatric care, and medication management. On January 26, 2007, following 90 days of no contact from Sparks and no response from Sparks to two outreach letters, Simmons discharged Sparks from the Swanson Center.

On April 17, 2007, Sparks sought treatment from Dr. Manna Gegeshidze ("Dr. Gegeshidize"). Dr. Gegeshidze diagnosed Sparks with mood disorder, cannabis dependence, alcohol abuse in remission, and cocaine abuse in remission. Dr. Gegeshidze gave Sparks a GAF score of 50, started her on psychotropic medications, and recommended that she resume counseling.

On May 10, 2007, Sparks testified at the administrative hearing that she had been fired from her last three jobs because she could not control her actions after interacting with people. Sparks clarified that events at work sometimes induced flashbacks, which in turn caused her to lose concentration and to break out crying. At the time of the hearing, Sparks was taking Prozac to control her bipolar disorder. Sparks admitted that some days are better than others but noted that her moods were often unpredictable

The major issues that this Court must resolve are: (1) whether the ALJ properly evaluated the evidence of record regarding the limiting effect of Sparks' severe impairments, absent substance abuse; and (2) whether the ALJ properly assessed Winston's credibility.

  B.  <u>Standard of Review</u>

The standard of review for an ALJ's decision is whether it is supported by substantial evidence and free of legal error. See 42 U.S.C. § 405(g); Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005); Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005); Golembiewski v. Barnhardt, 322 F.3d 912, 915 (7th Cir. 2003). Substantial evidence means such relevant evidence as a reasonable mind might accept to support such a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1972). A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion. Haynes, 416 F.3d at 626. An ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003). However, an ALJ's legal conclusions are reviewed *de novo*. Haynes, 416 F.3d at 626.

    C.    Sparks' Motion for Summary Judgment or Remand

To be entitled to benefits under 42 U.S.C. §§ 423, 1321a, Sparks must establish that he was "disabled." See 42 U.S.C. § 423(a)(1)(D). The Social Security Act defines "disability" as:

> [the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled. The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's RFC leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform

8

any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(I)-(v), 416.920; Briscoe, 425 F.3d at 352.

If the ALJ finds that the claimant is disabled or not disabled at any step, he may make his determination without evaluating the remaining steps. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If there is an affirmative answer at either step three or step five, then there is a finding of disability. Briscoe, 425 F.3d at 352. At step three, if the impairment meets any of the severe impairments listed in the regulations, the impairment is acknowledged by the Commissioner. See 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. app. 1, subpt. P, § 404. However, if the impairment is not so listed, the ALJ assesses the claimant's RFC, which in turn is used to determine whether the claimant can perform her past work under step four and whether the claimant can perform other work in society under step five. 20 C.F.R. § 404.1520(e). The claimant bears the burden of proof on steps one through four, but the burden shifts to the Commissioner at step five. Id.

After reviewing the record evidence, the ALJ, in the immediate case, found that Sparks' residual functional capacity allowed her to perform a full range of work at all exertional levels. (Tr. 20). However, the ALJ simultaneously concluded that Sparks' exertional levels had been compromised by nonexertional limitations, such as substance abuse. (Tr. 22). As a result, the ALJ found Sparks to be unable to do her past relevant work and unable to do any other job in the national economy. (Tr. 22). However, after determining that Sparks would not have any severe impairments, absent substance abuse, the ALJ ultimate concluded that Sparks was not disabled. (Tr. 23).

1. <u>The ALJ's determination that, absent substance abuse, Sparks would not have any severe impairments is supported by substantial evidence in the record</u>.

Sparks' primary argument on appeal is that the ALJ improperly evaluated the evidence of record in regards to the limiting effect of Sparks' severe impairments, absent substance abuse. In particular, Sparks argues that the ALJ failed to support his ultimate finding with record evidence but, rather, "played doctor" and based his final determination on lay conjectures rather than objective medical evidence.

The Social Security statutes and regulations take a strict approach to alcoholism and drug abuse. 42 U.S.C. § 423(d)(2)(C). If either form of substance abuse is deemed to be a material contributing factor to a claimant's disability, the claimant will not be entitled to benefits. <u>Id</u>.; <u>Williams v. Astrue</u>, 2007 WL 2362978, *5 (S.D. Ind. 2007). Consequently, the Social Security Administration has created a procedure for evaluating whether a claimant's substance abuse is a material contributing factor to a disability determination. <u>See</u> 20 C.F.R. § 404.1535(b). First, in order to determine whether substance abuse is a "material contributing factor," the ALJ must evaluate whether the claimant is disabled under the Social Security Act, pursuant to the normal five step analysis. <u>Williams</u>, 2007 WL 2362978, *5.

Next, if the ALJ determines the claimant to be disabled under this initial analysis, the ALJ then determines which of the claimant's physical and mental limitations would remain if he or she stopped using drugs or alcohol. 20 C.F.R. § 404.1535(b). <u>See</u> <u>also</u> <u>Whitlow v. Astrue</u>, 2009 WL 648602, *9 (S.D. Ind. 2009); <u>Davis v. Astrue</u>, 2009 WL 1312403, *8 (S.D. Ind. 2009); <u>Schmidt v. Astrue</u>, 2008 WL 1774381, *10 (N.D. Ind. 2008); <u>Williams</u>, 2007 WL 2362978, *5. Third, the ALJ must finally determine whether any or all of the claimant's remaining limitations,

absent substance abuse, would be disabling. Id. If so, the claimant is considered disabled independent of the substance abuse and is entitled to benefits. 20 C.F.R. § 404.1535(b)(2)(ii); Schmidt, 2008 WL 1774381, *10. However, if the ALJ determines that, absent the drug or alcohol abuse, the claimant's remaining limitations are not disabling, then substance abuse is deemed to be a factor material to the determination of disability and the claimant is not entitled to benefits. 20 C.F.R. § 404.1535(b)(2)(i); Davis, 2009 WL 1312403, *8; Schmidt, 2008 WL 1774381, *10 (N.D. Ind. 2008); Williams, 2007 WL 2362978, *5.

In formulating his opinion, the ALJ, in the immediate case, spent considerable time discussing and evaluating the evidence of record, providing a thorough and easy-to-follow roadmap of Spark's mental health treatment between 2002 and 2007. Having determined that Sparks suffered from the severe impairments of bipolar disorder, alcohol dependence, and cannabis dependence, the ALJ went on to conclude that, considered together, those impairments prevented Sparks from maintaining regular work activity on a continuing basis. Further, evaluating Sparks' severe impairments in the aggregate, the ALJ concluded that Sparks was unable to perform her past work or any other jobs in the national economy. Consequently, the ALJ made an initial determination that Sparks was disabled.

However, consistent with the requirements of the Social Security regulations, the ALJ continued his evaluation to determine whether Sparks' substance abuse was a material contributing factor to Sparks' disability determination. In doing so, the ALJ devoted an additional three pages of analysis, in which the ALJ considered the credibility of Sparks' testimony and the history of Sparks' mental health treatment in order to more specifically ascertain the limiting effects of Sparks' bipolar disorder, absent substance abuse. See Tr. 23-25.

11

As part of this analysis, the ALJ noted inconsistences in Sparks' testimony as a reason for diminishing the weight given to Sparks' own evaluation of the limiting effects of her disorder. Further, the ALJ noted the testimony of Sparks' ex-husband and cited numerous places in Sparks' medical record to show that Sparks' mental health had significantly and routinely improved when Sparks was compliant with her medical treatment and when Sparks was not self-medicating with drugs and alcohol. See Tr. 24. Finally, the ALJ also reevaluated the severity of Sparks' bipolar disorder, absent substance abuse, pursuant to the "special technique" provided by the Social Security administration. As part of this second evaluation, the ALJ specifically quantified the limiting effects of Sparks' disorder, citing again to numerous places in the record in which Sparks had reported high functioning during periods of sobriety. Tr. 25.

Such a thorough evaluation by the ALJ, in accordance with the procedural requirements set forth by the Social Security regulations and replete with frequent citations to the record evidence is sufficient to support the ALJ's conclusions and to afford this Court the ability to "trace the path of the ALJ's reasoning." See Diaz v. Chater, 55 F.3d 300, 307 (7th Cir. 1995). See also Davis, 2009 WL 1312403, *9 (holding that an ALJ properly evaluated whether a claimant's substance abuse was a material contributing factor to the claimant's disability, simply by following the sequential analysis laid out under 20 C.F.R. § 404.1535(b)); Whitlow, 2009 WL 648602 , *9 (holding that an ALJ properly evaluated the materiality of a claimant's substance abuse by articulating sufficient record evidence to substantiate his opinions and to allow meaningful review by the reviewing court). As such, this Court is not persuaded by Sparks' assertion that the ALJ's disability determination is unsupported by substantial evidence in the record or is based on lay conjectures by the ALJ. Instead, this Court concludes that the ALJ's

12

evaluation of Sparks' severe impairments, absent drug use, is well supported by evidence in Sparks' own treatment records and sufficiently articulated according to the procedural norms set forth by the Social Security Administration and other courts in this Circuit.

    2.    <u>The ALJ's credibility determination is also supported by substantial evidence.</u>

Sparks additionally alleges that the ALJ's determination of Sparks' credibility was erroneous. Because an ALJ is in a special position where he can hear, see, and assess witnesses, an ALJ's credibility determinations are given special deference, and will only be overturned if they are patently wrong. <u>Jens v. Barnhart</u>, 347 F.3d 209, 213 (7th Cir. 2003). <u>See</u> also <u>Prochaska v. Barnhart</u>, 454 F.3d 731, 738 (7th Cir. 2006) (holding "[o]nly if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported . . . can the finding be reversed.") (citations omitted). In addition, an ALJ is not required to provide a "complete written evaluation of every piece of testimony and evidence." <u>Rice v. Barnhart</u>, 384 F.3d 363, 370 (7th Cir. 2004) (<u>quoting</u> <u>Diaz v. Chater</u>, 55 F.3d 300, 308 (7th Cir. 1995)). However, an ALJ cannot simply state that an individual's allegations are not credible. <u>Golembiewski</u>, 322 F.3d at 915. Instead, Social Security Ruling 96-7p requires an ALJ to articulate specific reasons in a credibility finding. <u>Golembiewski</u>, 322 F.3d at 915; <u>Steele v. Barnhart</u>, 290 F.3d 936, 942 (7th Cir. 2002). Also, the ALJ may not simply recite the factors that are described in the regulations for evaluating symptoms. <u>Zurawski v. Halter</u>, 245 F.3d 881, 887 (7th Cir. 2001).

Determining Sparks' testimony to be not fully credible, the ALJ concluded that "[Sparks] has inconsistently reported her substance use . . ., and third-party reports of [her] functioning are inconsistent with [Sparks'] allegations." Tr. 24. In support of this conclusion, the ALJ cited

numerous treatment notes in the record in which Sparks, her doctors, and Sparks' former spouse had all articulated that Sparks' affect and prognosis significantly improved during periods of sobriety. In particular, the ALJ referred to periods in Sparks' treatment in which she reported doing better when abstaining from alcohol and complying with the medication regimen set forth by her doctors. In addition, the ALJ cited testimony from Sparks' ex-husband, in which he described Sparks as less moody, less hyper, more balanced, and less prone to get angry and agitated with others when Sparks is compliant with her medications. As such, the ALJ concluded that, absent substance abuse, the alleged limiting effects of Sparks' mental impairments would be less severe than articulated by Sparks.

Because the ALJ relied on substantial evidence in the record and sufficiently articulated his reason for discrediting Sparks' testimony, this Court finds that the ALJ's credibility determination to be reasonable. "Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported . . . can the finding be reversed." Prochaska, 454 F.3d at 738. In this case, the ALJ gave numerous reasons for his decision and supported each with evidence from the record. As such, this Court can not conclude that the ALJ's credibility determination is patently wrong. See Jens, 347 F.3d at 213 (holding that an ALJ's credibility determination will only be overturned if it is patently wrong).

### III. CONCLUSION

The ALJ's determination that Sparks would not have any severe impairments absent substance abuse was supported by substantial evidence in the record and supported by a thoroughly articulated analysis by the ALJ's. Similarly, the ALJ's provided substantial evidence and sufficient articulation in support of his credibility determination. Therefore, Sparks' motion

for remand is **DENIED**. [Doc. No. 15]. This Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The clerk is instructed to term the case and enter judgment in favor of the Commissioner.

**SO ORDERED.**

**Dated this 3rd Day of September, 2009.**

S/Christopher A. Nuechterlein  
Christopher A. Nuechterlein  
United States Magistrate Judge